IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NELLIE F. CULPEPPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:05cv467-CSC |
| ) | (WO) |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Nellie F. Culpepper ("Culpepper"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Culpepper then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. § 405 (g) and § 1631(c)(3). Pursuant

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Culpepper was 54 years old at the time of the hearing before the ALJ. (R. 266.) She has a twelfth grade education. (R. 267.) Culpepper's prior work experience includes work as a work distributor, deli worker, spinner/cleaner, and sales attendant. (R. 68, 268-69.)

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

Culpepper alleges that she became disabled due to carpal tunnel syndrome, tendinitis, hypertension, anxiety, and depression. (R. 17, 67, 270-72.) Following the administrative hearing, the ALJ concluded that Culpepper has severe impairments of osteoarthritis, DeQuervain's tenosynovitis, carpal tunnel syndrome with carpal tunnel release, and a history of lateral epicondilytis. (R. 23.) The ALJ found that Culpepper "possesses the residual functional capacity to perform light work activity not requiring frequent pushing, pulling, and fine manipulation." (R. 24.) The ALJ found that Culpepper was able to return to her past relevant work as a deli worker or sales attendant. (R. 26.) Accordingly, the ALJ concluded that Culpepper was not disabled. (*Id*.)

### IV. The Plaintiff's Claims

1. Whether the ALJ correctly evaluated the opinions of Culpepper's treating physicians.

2. Whether the ALJ properly evaluated the effects of Culpepper's medications.

3. Whether the ALJ properly assessed the credibility of Culpepper's subjective complaints.

4. Whether the ALJ considered all of Culpepper's impairments in combination.

5. Whether testimony from a vocational expert was required.

(Doc. No. 12.)

## V. Discussion

### A. The Opinion of the Plaintiff's Treating Physician

Culpepper asserts that the ALJ improperly discounted the opinion of Dr. Richard L. Bendinger, a general practitioner at the Family Practice Center of Abbeville.[4] The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).

The ALJ discounted Dr. Bendinger's opinion regarding the severity of Culpepper's impairments. Specifically, the ALJ determined that Dr. Bendinger's opinion that "Culpepper's ability to lift, carry, and handle was 'significantly impaired'" is not supported by the medical evidence. The ALJ noted that Dr. Bendinger failed to "specify exactly what he meant by 'significantly impaired.'" (R. 25.) The ALJ also found Dr. Bendinger's opinion

---

[4] Culpepper has received treatment from Dr. Bendinger since October of 1995. (R. 136-188, 213-223, 232-256.)

5

to be vague and "generally inconsistent with the objective findings presented elsewhere in the record." (R. 26.)  In addition, the ALJ determined that Dr. Bendinger is a family practitioner and that no specialist of orthopedics or neurology "opined that [Culpepper] has such a significant limitation of function." (*Id*.)

On January 28, 2003, Dr. Bendinger conducted a consultative examination of Culpepper. (R. 180.)  Dr. Bendinger determined that, on a 5-point scale, Culpepper's grip strength was a 3; her dexterity was fair; and Culpepper "has generalized osteoarthritic changes in her hands bilaterally making it difficult for her to grip, oppose her thumb to her fingers, although she can do this." (R. 183-84.)  The treating physician further noted that Culpepper was able to button her clothes "but . . . with difficulty," that her "dexterity does take some time," and that she was able to "tie her shoelaces and pick up small objects, hold a glass, and turn a doorknob, *etc.*" (R. 184.)  Dr. Bendinger concluded that, based on his findings, Culpepper's "ability to do work related abilities such as sitting, standing, and walking are essentially unimpaired; however, lifting, carrying, and handling objects due to arthritis in her hands would be significantly impaired." (*Id*.)

The record demonstrates that, while Culpepper may have some difficulty lifting or carrying *some* objects, it is clear that her abilities are not so impaired that she cannot lift, carry or handle *any* objects.  For example, during the hearing before the ALJ, Culpepper testified that, when she goes grocery shopping alone, she is able to lift "just small things like light bread or maybe every once in a while a gallon of milk." (R. 281.)  In addition, Culpepper testified that her ability to lift objects while shopping "depends on how bad [her]

6

hands are hurting" and that medicine "helps some but not completely all the way" and brings her pain "down to a dull ache." (*Id*.) She also stated that she is afraid to move "a pot of peas or something heavy with a lot of liquid" and that she has dropped a pot of soup "on occasion." However, Culpepper also stated that she frequently prepares toast and jelly and occasionally cooks a scrambled egg for breakfast. (R. 269, 278.) The fact that Culpepper is able to grasp cooking utensils when cooking small meals belies her assertion that her ability to hold objects is substantially impaired. Moreover, the medical records demonstrate that, although Culpepper occasionally reported that she was afraid to lift objects (R. 134) and that she had some difficulty pinching, gripping, and grasping items (R. 125, 128), Culpepper did not consistently report to any physician that she dropped or was unable to handle any objects. The court therefore concludes that the ALJ's discrediting of Dr. Bendinger is supported by substantial evidence.

### B. The Effects of Medication

Culpepper asserts that the ALJ failed to consider the effects her prescribed medications have on her ability to work.[5] During the hearing, Culpepper testified that she rests during the day because her medications "make [her] so drowsy it's like you're fighting World War III trying to stay awake and . . . you just can't do it." (R. 278.) The ALJ must

---

[5] The court notes that, although Culpepper asserts that Wellbutrin caused her to suffer from drowsiness, she reported on a disability report that Wellbutrin caused no side effects. (R. 72.) In addition, although the record indicates that warning labels on Lotrel, a blood pressure medication, and P-Ephel/Chlor/Malla, a sinus medication, caution that the pills "may cause drowsiness," Culpepper did not report to her physicians that she suffered any side effects. (R. 116.) In addition, the medical records do not indicate that Culpepper filled her prescription for P-Ephel/Chlor/Malla from the pharmacy. (R. 117-121.)

7

consider the side effects of Schaefer's medication where their existence is supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). However, there is no medical evidence demonstrating that Culpepper complained of any side effects to her doctors. The ALJ properly considered Culpepper's complaints and then discredited her testimony because the medical records do not support her allegations. Specifically, the ALJ found that "there is no evidence in the record that medication side effects can be expected to limit the claimant's effectiveness in the performance of work duties or everyday tasks or that those side effects can be expected to be severe and to limit the claimant's overall effectiveness." (R. 25.) The ALJ also noted that "[n]o physician has opined that the claimant has long-term functional limitations caused by her pharmacological regimen." (*Id*.) Substantial evidence supports the ALJ's conclusion that Culpepper's medications do not cause side effects which prevent her from working. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and are based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

### C. The Pain Standard

Culpepper contends that the ALJ failed to properly evaluate her subjective complaints of pain. During the hearing before the ALJ, Culpepper testified that she has "problems with [her] shoulders especially when the weather's real bad," that she has "no strength in [her] hands at all," and that she has "four fingers that will lock up . . . periodically." (R. 269-270.) In addition, Culpepper stated that she has "a lot of bad days" in which "[i]t feels like lightning shooting through my hands and it's been just really, really terrible." (R. 281.) She

8

testified that, even "six weeks since [her carpal tunnel] surgery, [she] cannot put any pressure on [her] left hand at all . . . [a]nd there's been times it has been so bad I have to put a Band Aid over the scar and wear an arm brace to keep from using my arm because the pain is just so bad . . . you can't stand to use your hand." (*Id*.)  According to Culpepper, medication "help[s] some but not all the way" and that "it kind of comes down to a dull ache." (R. 281.)

The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553.

The Commissioner must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Commissioner has, as a matter of law, accepted the testimony as true. This standard requires that the articulated reasons be supported by substantial reasons.  If there is no such support, the testimony must be accepted as true. *Hale v. Bowen*, 831 F.2d

9

1007, 1012 (11th Cir. 1987).

The medical evidence demonstrates that Culpepper suffers from arm, wrist, and hand pain. For example, on April 1, 2003, x-rays of Culpepper's hands indicated she suffered from a cystic lesion on the middle finger of her left hand and a cyst in the coneiform bone of her right hand. (R. 222-23.) On April 14, 2004, Dr. Orvis Chitwood, an orthopaedic surgeon, diagnosed Culpepper as suffering from left carpal tunnel syndrome, a dorsal ganglion cyst, and "trigger thumb, trigger digit right hand and left long finger respectively." (R. 258.) On April 30, 2004, Dr. Chitwood performed a left carpal tunnel release. (R. 224.) Therefore, Culpepper meets the first prong of the pain standard.

However, the ALJ determined that Culpepper's testimony of disabling pain was not credible. Specifically, the ALJ determined that the objective clinical findings demonstrated that there was no evidence of any neurological impairments, that Culpepper responded favorably to carpal tunnel surgery, and that the range of motion of her shoulders, elbows, wrists, hands, and fingers was normal. In addition, the ALJ noted that x-rays of Culpepper's hands indicated some arthritic changes but that the x-rays were otherwise unremarkable. As support for his decision, the ALJ also found that Dr. Meadows' report indicated that Culpepper's muscle strength was intact, that repeated exercises did not lessen her grip strength, and that her fine motor control was good.

Substantial evidence in the record supports the ALJ's finding that the medical records are inconsistent with Culpepper's allegations that she suffers disabling pain. Although Culpepper frequently sought treatment for pain in her arms and hands, the medical records

demonstrate that her pain was temporarily alleviated or that her conditions improved after treatment.  For example, after Culpepper received an injection of Lidocaine and Celestone to treat her right wrist pain in February 2001, Dr. Chitwood noted that Culpepper had "done very well," that she had "no real complaints of pain at all at this point," and that her DeQuervains tenosynovitis had "completely resolved."  (R. 127-28.)  On July 18, 2002, Dr. Dehaven injected Culpepper's left elbow and wrist with Xylocaine, Marcaine, and Triamcinolone and advised Culpepper to wear a splint and return if her condition did not improve within a few weeks. (R. 126.)  On September 4, 2002, Culpepper returned to the surgeon's office with complaints of pain in both arms.  (R. 124.)  Dr. Dehaven prescribed a Medrol dose pack and advised her that he would inject her elbow if her condition did not improve.  (Id.)

Four months later, on January 28, 2003, Culpepper presented to the Family Practice Center to discuss disability issues, complaining of hand and shoulder pain and swelling of both hands.  (R. 253.)   In April 2003, Dr. Meadows, Culpepper's treating physician, conducted a consultative examination.  (R. 245-47.)  Dr. Meadows determined that the range of motion of Culpepper's extremities was fair, that Culpepper had some pain when flexing her wrists, and that she suffered from a ganglion cyst in the left wrist at the junction of her index finger.  (R. 215.)  In addition, Dr. Meadows noted that Culpepper had marked tenderness and suffered pain with extension against resistance, especially in the right lateral epichondryl.  (*Id*.)  He also found that Culpepper's muscular strength was 5/5 and that "repetitive gripping causes the patient to complain of increased pain and discomfort, and

11

stiffness, but does not show any great dimunition of her strength." (R. 215-16.) Dr. Meadows further noted that Culpepper had good oppositional strength of her thumbs and little fingers, that her fine motor control was good, and that she was able to pick up small objects and tie her shoelaces. (R. 216.) The treating physician concluded that Culpepper "probably has osteoarthritis with its complications," that she "has neuropathic-type symptoms, possibly bilateral carpal tunnel syndrome . . . [and] parethesias of her hands, probably secondary to this, but also probably due to ulnar entrapment of the elbow," that she "has neck and back pain, probably related to osteoarthritic changes,"[6] and that she "has lateral epichondylitis, probably most noticed on the right." (R. 216.) X-rays conducted on April 1, 2003, indicate that Culpepper suffered from a cystic lesion on the middle finger of the left hand and a cystic lesion on the coneiform bone of her right hand. (R. 223.) The radiologist noted that the x-rays indicated no other abnormalities.[7] (*Id*.)

In June and August of 2003, Culpepper returned to the Family Practice Center with complaints of hand and arm pain and a physician referred her to Dr. Chitwood for treatment. (R. 241.) On October 3, 2003, Dr. Chitwood administered an injection of Lidocaine and Batemethasone in Culpepper's right elbow joint and advised Culpepper to return if her symptoms did not improve. (R. 259.) Six months later, on April 14, 2004, Culpepper returned to Dr. Chitwood's office with complaints of numbness and tingling in her left hand and pain in the right thumb and long finger. (R. 258.) Dr. Chitwood discussed treatment

---

[6] Dr. Meadows noted that no radiculopathy of the lower back was found. (R. 216.)

[7] The radiologist also noted that there were no arthritic changes of the left hand. (R.222-23.)

options and advised Culpepper that carpal tunnel release surgery "would not take away all of her hand pain." (*Id.*) On April 30, 2004, Dr. Chitwood performed a left carpal tunnel release. (R. 224.) During a follow-up visit on May 3, 2004, Dr. Chitwood determined that, although Culpepper had "active triggering of her thumbs," she was "doing well from carpal tunnel release." (R. 257.) The surgeon noted that, if Culpepper continued to have trouble with her thumbs, he would give her an injection. (*Id.*) However, the medical records demonstrate that, during a follow-up exam on May 12, 2004, Culpepper was "doing well" and that no injection was ordered. (*Id.*) Additionally, on September 5, 2003, the results of EMG and nerve conduction studies conducted on Culpepper's upper extremities were normal. (R. 239.) Given that the medical records demonstrate that Culpepper has responded well to surgery, that her pain decreases after receiving injections or other treatment, and that medical testing demonstrates that Culpepper exhibits good fine motor control and her muscular strength is not diminished as the result of repetitive exercises, the court concludes that the ALJ's determination that the objective medical evidence does not support the severity of symptoms alleged by Culpepper is supported by substantial evidence.

Culpepper asserts that the ALJ erroneously concluded that her complaints of pain were not wholly credible in light of her activities of daily living. Specifically, she argues that the ALJ incorrectly found that her ability to perform light housework represented a full range of daily activities. In his analysis, the ALJ determined:

> In her testimony, the claimant alleged various symptoms, including pain. The claimant's complaints are inconsistent, for example, with her activities of daily living. For example, the

>claimant told Dr. Meadows that she could perform "light housework" despite her impairments. . . . It is also noteworthy that the claimant has not required any hospitalizations for pain and has not been referred to a pain clinic. . . . The claimant's impairments did not have an adverse effect on her ability to answer questions and remember facts at her hearing and have not rendered her completely unable to drive. No doctor has opined that the claimant is totally disabled because of her pain or any other reason. . . .

(R. 25.) (Citations omitted.) It is clear that the ALJ's reference to Culpepper's ability to perform some housework was merely one of many examples used to support his conclusion that Culpepper's condition was not as severe as alleged. Moreover, the ALJ's determination concerning Culpepper's activities of daily living is supported by substantial evidence. For example, Culpepper testified that she drives her husband's truck "very little." (R. 267.) Additionally, Dr. Meadows noted in his disability report that Culpepper "is able to do some light housework, load the dishwasher, cook, make the beds, but she is not able to do anything like vacuuming or sweeping or lifting because of the pain in her arms and her back." (R. 214.)

The ALJ considered that Culpepper's condition was capable of giving rise to some pain; however, he concluded that her condition was not so severe as to give rise to the disabling pain as alleged. The ALJ has discretion to discredit a claimant's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt*, 921 F.2d at 1223. A reviewing court will not disturb a clearly articulated credibility finding where there is substantial evidence in the record to support the finding. *See Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir.

1986). The ALJ's reasons for discrediting Culpepper's testimony of disabling pain were both clearly articulated and supported by substantial evidence. After a careful review of the record, the court concludes that the ALJ properly discounted Culpepper's testimony of pain.

### D.  The Combination of Impairments

To the extent Culpepper asserts that the ALJ failed to consider the combination of her impairments, she is not entitled to relief. The ALJ must consider every impairment alleged by Culpepper and determine whether the alleged impairments are sufficiently severe - either singularly or in combination - to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986). All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe. *Hudson v. Heckler,* 755 F.2d 781,785 (11th Cir. 1985). The ALJ must state, with sufficient specificity, the reasons for her decision referencing the plaintiff's impairments. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). In this case, it is clear that the ALJ met his burden with respect to evaluating all the evidence of Culpepper's impairments in combination. He properly considered the medical evidence; set forth in detail his reasons for discounting the opinions of Culpepper's treating physician; and properly discredited her subjective complaints of pain and other symptoms. Thus, after careful review of the record, the court finds that the ALJ's determination is supported by substantial evidence.

### E.  The Vocational Expert

Culpepper asserts that the ALJ failed to question a vocational expert during the hearing. Culpepper misunderstands the sequential evaluation process. The ALJ truncated the sequential evaluation process at step four by concluding that Culpepper could perform her past relevant work as a deli cutter-slicer or a sales attendant. If Culpepper can return to her past relevant work, any failure on the part of the ALJ to question the vocational expert to consider whether Culpepper's her pain or other limitations affected her ability to work is of no consequence. Vocational factors are not considered at step four of the sequential evaluation process. 20 C.F.R. § 416.960(b). *See also Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) (vocational expert testimony is not required at step four to evaluate a claimant's ability to perform past relevant work).

## VI. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. A separate order affirming the Commissioner's decision will be entered.

Done this 9th day of August, 2006.

                /s/Charles S. Coody
                CHARLES S. COODY
                CHIEF UNITED STATES MAGISTRATE JUDGE